IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEATHERMAN TOOL GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 24-cv-05014 |

# COMPLAINT

Plaintiff Leatherman Tool Group, Inc. ("Plaintiff" or "Leatherman") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Leatherman's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including multi-tools, shears, and knives using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff is a privately held corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 12106 NE Ainsworth Circle, Portland, Oregon 97220.

5. Leatherman is an American brand of multi-tools, shears, and knives founded in 1983 that is committed to bringing consumers high-quality products to help solve expected and unexpected problems in everyday life (collectively, the "Leatherman Products").

6. Leatherman has become a global success and is known as the originator and world's leading manufacturer of high-quality multi-tools. Plaintiff currently sells fifty (50) Leatherman Products in approximately eighty (80) countries and employs over five hundred (500) full-time employees.

7. The Leatherman brand is a multi-million-dollar brand, and Plaintiff spends considerable resources marketing and protecting it.

8. Plaintiff is the owner of numerous trademarks including LEATHERMAN and RAPTOR. Plaintiff has continuously sold Leatherman Products under its trademarks for many years. As a result of its long-standing use, Leatherman owns common law trademark rights in its trademarks. Plaintiff has built substantial goodwill in and to its trademarks. In addition to common law trademark rights, Plaintiff has registered several of its trademarks with the United States Patent and Trademark Office. Leatherman Products typically include at least one of Plaintiff's registered trademarks. Plaintiff uses its trademarks in connection with the marketing of its Leatherman Products, including the following non-exclusive list of federally registered trademarks which are collectively referred to as the "LEATHERMAN Trademarks."

| 9. Registration Numbers | Trademark |
|---|---|
| 1,325,473<br>2,596,689<br>3,486,021<br>5,401,240<br>5,414,231 | LEATHERMAN |
| 6,013,394 | LEATHERMAN FREE |
| 4,437,372 | RAPTOR |
| 3,103,657 | BLADE LAUNCHER |
| 6,449,806 | BOND |
| 6,540,579 | CURL |
| 2,856,896 | CHARGE |
| 2,371,715 | CRUNCH |
| 3,558,892 | CRATER |
| 5,776,732 | FREE |
| 3,788,508 | MUT |
| 2,076,429 | MICRA |
| 4,255,186 | OHT |
| 4,749,246 | REV |
| 4,234,740 | REBAR |
| 4,847,119 | SIGNAL |
| 3,449,268 | SURGE |
| 3,854,637 | STYLE |
| 4,074,915 | SIDEKICK |
| 3,415,438 | SKELETOOL |
| 2,440,250 | SUPER TOOL |
| 2,222,490 | WAVE |
| 4,039,772 | WINGMAN |
| 5,783,288 | (L logo) |

10. The above U.S. registrations for the LEATHERMAN Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the LEATHERMAN Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the LEATHERMAN Trademarks pursuant to 15 U.S.C. §

4

1057(b). The LEATHERMAN Trademarks have been used exclusively and continuously by Plaintiff for many years, and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed LEATHERMAN Trademarks are attached hereto as **Exhibit 1**.

11. The LEATHERMAN Trademarks are distinctive when applied to the Leatherman Products, signifying to consumers that the products originate from Leatherman and are manufactured to Leatherman's high-quality standards. Plaintiff has ensured that products bearing its LEATHERMAN Trademarks are manufactured to the highest quality standards.

12. The LEATHERMAN Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). The innovative marketing and product designs of the Leatherman Products have enabled the Leatherman brand to achieve widespread recognition and fame and have made the LEATHERMAN Trademarks some of the most well-known marks in the industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Leatherman brand have made the LEATHERMAN Trademarks valuable assets of Plaintiff.

13. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the LEATHERMAN Trademarks. In fact, Plaintiff has expended millions of dollars annually in advertising, promoting, and marketing featuring the LEATHERMAN Trademarks. Leatherman Products have also been the subject of extensive unsolicited publicity resulting from their high quality, performance, and innovative design. As a result, products bearing the LEATHERMAN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Leatherman. Leatherman Products have become among the most popular of their kind in the U.S. and the world. The LEATHERMAN Trademarks have achieved tremendous fame and recognition

which has only added to the distinctiveness of the marks. As such, the goodwill associated with the LEATHERMAN Trademarks is of incalculable and inestimable value to Plaintiff.

14. Leatherman Products are sold to consumers online via the leatherman.com website, the company operated Amazon.com storefront, and through authorized retailers, including in Illinois. Sales of Leatherman Products via the leatherman.com website are significant. The leatherman.com website features proprietary content, images, and designs exclusive to the Leatherman brand.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Letherman brand has resulted in significant counterfeiting of the LEATHERMAN Trademarks. In recent years, Leatherman has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, and Temu, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken

7

down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of its LEATHERMAN Trademarks, and none of the Defendants are authorized retailers of genuine Leatherman Products.

21. Many Defendants also deceive unknowing consumers by using the LEATHERMAN Trademarks without authorization within the content, text, and/or meta tags of

8

their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Leatherman Products. Other e-commerce stores operating under the Seller Aliases omit using LEATHERMAN Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Leatherman Products.

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit

9

Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Leatherman's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Leatherman, have jointly and severally, knowingly, and willfully used and continue to use the LEATHERMAN Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the LEATHERMAN Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has

caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered LEATHERMAN Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The LEATHERMAN Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Leatherman Products offered, sold, or marketed under the LEATHERMAN Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the LEATHERMAN Trademarks without Leatherman's permission.

32. Leatherman is the exclusive owner of the LEATHERMAN Trademarks. Leatherman's United States Registrations for the LEATHERMAN Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the LEATHERMAN Trademarks and are willfully infringing and intentionally using counterfeits of the LEATHERMAN Trademarks. Defendants' willful, intentional, and unauthorized use of the LEATHERMAN Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LEATHERMAN Trademarks.

35. The injuries and damages sustained by Leatherman have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Leatherman.

38. By using the LEATHERMAN Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**PRAYER FOR RELIEF**

WHEREFORE, Leatherman prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the Leatherman Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Leatherman Product or is not authorized by Leatherman to be sold in connection with the LEATHERMAN Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Leatherman Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the LEATHERMAN Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the LEATHERMAN Trademarks and damaging Plaintiff's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the

LEATHERMAN Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the LEATHERMAN Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LEATHERMAN Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LEATHERMAN Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of June 2024.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff Leatherman Tool Group, Inc*.